IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 12-cv-01265-WYD

TAMI L. KAISER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

# ORDER

I.    INTRODUCTION

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for supplemental security income ["SSI"] benefits under the Social Security Act ["the Act"]. For the reasons stated below, the Commissioner's decision is affirmed.

II.    BACKGROUND

Plaintiff, born in 1971, was age 39 as of the administrative law judge's ["ALJ"] decision in this case. (ECF No. 13, Transcript ["Tr."] 108.) She has a high school equivalent education ["GED"]. (*Id.* 206.)

Plaintiff applied for SSI benefits in March 2009 alleging disability due to "[d]iabetes, migraines, arthritis, depression, hearing, bipolar, hearing loss, chronic

diarrhea, heart murmur." (Tr. 108-10, 131.)[1] After her application was denied (*id*. 54-57), Plaintiff timely requested a hearing before an ALJ. (*Id*. 60-62.)

The ALJ held a hearing on January 19, 2011, at which time Plaintiff was represented by counsel. (Tr. 21-53.) The ALJ issued a decision on January 31, 2011, finding Plaintiff was not disabled. (*Id*. 8-20). Applying the five-step sequential evaluation process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since filing her application in March 2009. (*Id*. 10, Finding 1.) At steps two and three, the ALJ found Plaintiff had severe impairments (diabetes mellitus, osteoarthritis/ degenerative joint disease, obesity, and hearing loss), but that her impairments did not meet the requirements of a listed impairment. (*Id*. 10-12, Findings 2-3.)

The ALJ then evaluated the record and concluded that Plaintiff had the residual functional capacity ["RFC"] to perform "light" work with frequent balancing; occasional climbing stairs, kneeling, stooping, and crawling; no climbing of ladders, ropes, or scaffolds; and other restrictions. At step four, the ALJ found that Plaintiff did not have any past relevant work. (*Id*. 16, Finding 5.) At step five, the ALJ relied in part on vocational expert testimony to conclude that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including assembly worker, food packager, and inspector. (*Id*. 16-17, Findings 6-9.) Thus, the ALJ concluded Plaintiff was not disabled under the Act since March 5, 2009, the date the application was filed. (*Id*. 8, 17, Finding 10.)

---

[1] Plaintiff filed a prior application for benefits which was denied by an administrative law judge in February 2009 and not appealed. (Tr. 25.) Thus, I do not address that decision.

The Appeals Council denied Plaintiff's request for review (Tr. 1-4), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 416.1481 (2012). This appeal followed.

Plaintiff, who is *pro se* in this action, did not file an opening brief as contemplated in the Joint Case Management Plan for Social Security Cases, ECF No. 14. She did, however, submit a handwritten letter of August 6, 2012, which I will construe as her opening brief. Plaintiff argues therein that she is entitled to benefits because (1) she has conditions listed in her application; (2) her conditions include progressive diseases that will not go away; and (3) her doctor has "listed [her] as disabled".

Additionally, in her letter filed October 18, 2012, which I will construe as her reply, Plaintiff asserts that her diabetes mellitus type II and osteoarthritis are chronic conditions, and that she also has hearing loss, depression, borderline personality disorder/bi-polar tendencies, morbid obesity, patello-fibular crepitis, and diarrhea occurring four-five days per week. She attaches progress reports from her current doctor as well as her last hearing test which she asserts shows profound hearing loss in both ears.

The Commissioner argues that the ALJ's decision is free of legal error and supported by substantial evidence. Thus, he argues that the decision should be affirmed.

II. ANALYSIS

    A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human*

*Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B. <u>Whether the ALJ's Decision Should Be Reversed for Error</u>

I first address Plaintiff's argument that she is entitled to benefits because she has several "conditions", and that some of those conditions–including osteoarthritis, diabetes, and "patella-fibular crepitis [sic]"–are progressive or chronic diseases that will never go away. (Pl.'s Opening Br. at 1.) It is undisputed that Plaintiff has impairments that significantly, and negatively, impact her ability to work. The ALJ acknowledged this by finding that Plaintiff's diabetes mellitus, osteoarthritis/ degenerative joint disease, obesity, and hearing loss were severe impairments. However, the mere existence of severe impairments is insufficient to establish disability under the Act. Rather, Plaintiff had to show that her impairments caused functional limitations so severe that she was unable to perform any substantial gainful activity for a continuous period of at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A); *Barnhart v. Walton*, 535 U.S. 212, 219-220 (2002). The *disability*, not just the impairment, must last 12 months. *Id.*

Plaintiff relies on the fact that her doctor has "listed [her] as disabled". (Pl.'s Br. at 1.) This is not accurate. While Dr. Moeller's treatment notes state "no Employment, disabled", this was merely listed as part of Plaintiff's report of her "Social History". (Tr. 271, This opinion was not made as part of Dr. Moeller's assessment of Plaintiff's impairments (*id.*), and was thus not an opinion that she was disabled under the standards of the Act. Notably, Plaintiff asked two other physicians to complete paperwork supportive of her disability claim, and both declined to do so. (*Id.* 236, 267). One of the physicians went even farther, stating "we do not see her for anything that is disabling." (*Id.* 16, 267.) This evidence supports the ALJ's conclusion that Plaintiff was not disabled by her impairments.

Moreover, as to Plaintiff's "progressive" diseases, the ALJ correctly noted that examinations and medical imaging revealed at most "mild" findings in regard to Plaintiff's osteoarthritis in her hands and knees. (Tr. 14-15, *see also* 173, 183, 215, 273.) Further, Dr. Moeller noted that Plaintiff was in no acute distress (*id.* 271), contrary to what should be expected from someone in pain as severe and disabling as Plaintiff alleges. *See White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2002) (credibility determination properly based on inconsistencies between a claimant's statements and the medical evidence). Also, an examining doctor suggested that Plaintiff may have been exaggerating her hand and knee symptoms, since she "[w]inced" "dramatically" upon palpation of her joints, but did not react at all when distracted and was able to "take her shoes and socks on and off with no difficulty whatsoever". (*Id.* 173). An ALJ must consider inconsistencies in the record. 20 C.F.R. § 416.929(c)(4).

The ALJ also correctly noted that the treatment providers have denied Plaintiff's repeated requests for narcotics (Tr. 14), opting instead for conservative treatment with anti-inflammatory and over-the-counter medications, ice, stretching, exercise, and weight loss. (*Id.* 15, 172-73, 177, 181, 216, 222, 273.)  This further supports the ALJ's decision that Plaintiff was not disabled within the meaning of the Act, as does the ALJ's consideration of Plaintiff's poor work history and household activities which he found were inconsistent with Plaintiff's claimed symptoms.  (Tr. 15-16.)  *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) (ALJ must consider the type of treatment a claimant receives); 20 C.F.R. § 416.929(c)(3) (ALJ must consider evidence about a claimant's prior work record and daily activities).  Finally, as to Plaintiff's diabetes, her repeated non-compliance with treatment for this disease (Tr. 14) supported the ALJ's decision that the disease was not disabling.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000) (ALJ reasonably found the claimant failed to follow prescribed treatment).  I further note that Plaintiff has not pointed to, and I have not found, anything in the record that supports a greater degree of restriction than imposed by the ALJ related to these impairments.

Plaintiff also argues, however, that in addition to her progressive impairments which were found to be severe by the ALJ, she has depression, borderline personality disorder/bi-polar tendencies, patello-fibular crepitis [sic], and diarrhea occurring four-five days per week. I thus examine whether the ALJ properly assessed these impairments.

I first find that the crepitus complained of by Plaintiff does not support her argument that she is disabled.  As noted by the Commissioner, crepitus is not a progressive disease. Rather, it is "a clicking sound that is often heard in movement of joints." The Free Dictionary,

Medical Dictionary, *Crepitus* http://medical-dictionary.thefreedictionary.com/crepitus. The significant impairment related to Plaintiff's joints is the osteoarthritis/degenerative joint disease, which I find the ALJ properly considered and found to be severe but not disabling.

As to Plaintiff's mental impairments, the ALJ applied the special technique that must be used to evaluate such impairments. 20 C.F.R. § 404.1520a. He found that Plaintiff had at most only mild limitations in the four functional areas required to be considered; thus, he concluded that her mental impairments were "nonsevere". (Tr. 11-12.) I find that this is supported by substantial evidence. For example, while Dr. Andres diagnosed Plaintiff with Chronic Adjustment Disorder with disturbance of conduct and Personality Disorder NOS, he assessed her GAF as 65. (*Id.* 209.) This GAF score shows "'[s]ome mild symptoms (e.g. depressed mood or mild insomnia), OR some difficulty in social, occupational, or school functioning. . . but generally functioning pretty well. . . .'" *Keys-Zachary v. Astrue*, 685 F.3d 1156, 1162 n. 1 (2d Cir. 2008) (quotation omitted). The ALJ's findings are also supported by the Psychiatric Review Technique form prepared by Dr. Ziomek, in which she assessed only mild limitations. (Tr. 242-255.) Consistent with his finding of mild limitations, the ALJ included in the RFC the restriction that Plaintiff "is mildly limited with respect to activities of daily living and concentration, persistence, and pace." (*Id.* 12.) Plaintiff has not pointed to anything in the record that requires more significant restrictions.

While there is an opinion by Heather Barron, M.A., opining that Plaintiff had a GAF score of 50, indicative of serious symptoms, the ALJ gave legitimate reasons to give little weight to her opinion. (Tr. 11.) Indeed, Ms. Barron noted numerous discrepancies in Plaintiff's reporting and history, and indicated Plaintiff "may be motivated to misrepresent

symptoms". (*Id.* 204.)  Accordingly, she made clear that her diagnoses were tentative, and that "[f]urther assessment of symptoms is necessary to establish a firmer diagnosis." (*Id.*)

The ALJ also considered Plaintiff's hearing loss, noting that Plaintiff complained of very limited hearing and that she must read lips. (Tr. at 14-15.)  It was further noted that Plaintiff stated that a hearing aid had been recommended, but that she had not obtained one. (*Id.* at 15, 42.)  The ALJ stated that no audiological reports or other records establishing hearing loss had been provided (*id.* at 14-15), but that he accepted Plaintiff's "allegation that she has been diagnosed with hearing loss." (*Id.* at 14.)  Accordingly, the ALJ noted that Plaintiff "has some difficulty hearing, but for ordinary conversational purposes, she has no limitation." (*Id.* at 12.)  Nonetheless, he included in the RFC a restriction that Plaintiff "should avoid noisy environments." (*Id.*)  In support of this RFC, the ALJ found that Plaintiff "is able to communicate using other cues and has not found [a hearing aid] necessary; thus, the undersigned finds that the [RFC] adequately accounts for her hearing limitations." (*Id.* at 15.)  I find that this is supported by substantial evidence.  Indeed, the Tenth Circuit has determined that the fact hearing loss can be improved by hearing aids, as in this case, supports the ALJ's finding of no disability based on hearing loss.  *Williams v. Chater*, No. 95-7119, 1996 WL 240072, *2 (10th Cir. May 8, 1996) (unpublished) (citing 20 C.F.R. Pt. 404, subpt. P. app. 1. 2.08) (hearing impairments is determined by hearing loss not restorable by hearing aids)).  Further, Plaintiff has not shown how the ALJ's findings on this issue were incorrect or unsupported by the evidence.[2]

---

[2] While Plaintiff attaches an audiological report to her reply, this was not presented to the ALJ or in the record.  Accordingly, it does not provide a basis to overturn the ALJ's decision.

-8-

Finally, as to Plaintiff's complaints of diarrhea, I again find no error in the ALJ's analysis. The ALJ noted that Plaintiff claimed she had frequent bouts of diarrhea due to her medical side effects. (Tr. 11.) The ALJ found, however, that the medical evidence does not reflect that Plaintiff "ever reported such significant side effects." (*Id.*) He further stated that it was "reasonable to conclude that if the claimant experienced diarrhea of the frequency and intensity she alleged, she would have reported this to her care providers." (*Id.*) Again, this is reasonable and supported by the evidence, and Plaintiff has not shown how these findings were erroneous.

III.   CONCLUSION

In conclusion, I find that the ALJ's decision is supported by substantial evidence. I further find that Plaintiff has not shown any legal errors by the ALJ. It appears the ALJ properly considered Plaintiff's impairments, imposed a RFC consistent with those impairments, and found that her impairments were not disabling within the meaning of the Social Security Act. Accordingly, it is

ORDERED that the Commissioner's decision denying Plaintiff's application for supplemental security income benefits under the Social Security Act is **AFFIRMED**.

Dated:  March 11, 2013

                                            BY THE COURT:

                                            s/ Wiley Y. Daniel
                                            Wiley Y. Daniel
                                            Senior United States District Judge